IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


GARY SMITH                                                                    PLAINTIFF


        v.                          Civil No. 13-2038


CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                DEFENDANT

MEMORANDUM OPINION

        Plaintiff, Gary Smith, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a

decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for

a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act

(hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A). In this judicial review, the court must determine

whether there is substantial evidence in the administrative record to support the Commissioner's

decision.  *See* 42 U.S.C. § 405(g).

I.      Procedural Background

        Plaintiff applied for DIB on April 27, 2010. (Tr. 19.) Plaintiff alleged an onset date of October

7, 2009 due to chronic headaches, uncontrollable falling down, confusion, and bulging discs in his back.

(Tr. 19, 138.)  Plaintiff's application was denied initially and on reconsideration. Plaintiff requested an

administrative hearing, which was held on June 7, 2011. (Tr. 35.) Plaintiff was present to testify and was

represented by counsel.  The ALJ also heard testimony from Vocational Expert ("VE") Floyd Massey.

(Tr. 35.)

        At the time of the administrative hearing, Plaintiff was 36 years old, and possessed a high school

diploma. (Tr. 139.) The Plaintiff had past relevant work experience ("PRW") of maintenance worker and

heavy equipment operator. (Tr. 139.)

_____

        [1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner
Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

On December 16, 2011, the ALJ concluded that Plaintiff suffered from the following severe impairments: depression, obesity, headaches, and disorder of the nervous  system. (Tr. 21.)  The ALJ found that Plaintiff maintained the residual functional capacity to perform sedentary work except that "he can occasionally climb, balance, crawl, kneel, stoop and crouch. He must avoid hazards, including unprotected heights and moving machinery. In addition, he can only do work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved and supervision is simple, direct and concrete." (Tr. 23.)  With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as assembly work (such as lens inserter), and hand packer. (Tr. 29.)

Plaintiff requested a review by the Appeals Council on January 9, 2012. (Tr. 14.)  The Appeals Council denied the appeal on January 7 and February 26, 2013. (Tr. 1-13.)

## II.    Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

AO72A
(Rev. 8/82)

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)©.  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Discussion

Plaintiff raises two issues on appeal: 1) the ALJ erred in his credibility analysis and 2) the ALJ erred because he did not give any specific reason for the weight afforded to the opinions of Dr. Walz, Dr. Kelly, Dr. Kareus, Dr.Waack, and Dr. Baker as required by SSR 96-2p. (Tr. 12, 19.)

### A. Credibility Analysis

3

Plaintiff makes a number of error arguments concerning the ALJ's credibility analysis, including: 1) failure to state a reason for discrediting Plaintiff's subjective complaints concerning his debilitating headaches; 2) use of Dr. Walz's finding that the Plaintiff was showing minimal effort and likely exaggerating symptoms on his neuropsychological exam without also mentioning that she thought his pseudo seizures were due to stress; 3) failure to state a reason for rejecting treating primary care physician Dr. Baker's statement that Plaintiff could not return to work; and 4) failure to state a reason for rejecting the statements of third parties concerning Plaintiff's subjective allegations.(Pl.'s Br. 12-19.)

In determining a claimant's RFC, "'the ALJ must first evaluate the claimant's credibility.'" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d 687, 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). In discrediting a claimant's subjective complaints, an ALJ is required to consider all available evidence on the record as a whole and is required to make an express credibility determination. *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir. 2000). However, the ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004). An ALJ's decision to discredit a claimant's credibility is entitled to deference when the ALJ provides "good reason for doing so." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001.)

The arguments indicating that the ALJ failed to state a reason for rejecting various allegations are without merit. Indeed, the ALJ expressly stated a number of reasons for discrediting the Plaintiff's allegations of debilating headaches as well as other symptoms, including inconsistent information

4

provided by Plaintiff in the record, failure to follow prescribed treatment, evidence of malingering or exaggeration, evidence of impairments controlled by treatment, and lack of limitations on activity from Plaintiff's physicians.

Plaintiff alleges that his headaches and other impairments began as a result of his motor vehicle accident in October 2009. (Pl's Br. 4.)

The ALJ noted that the Plaintiff gave two different accounts of the speed of the crash at two different emergency room visits. (Tr. 26.) At his first visit on the day of the accident, he stated that the other car was going 35 miles per hour. At the second visit he stated that the other car was going over 55 miles per hour. (Tr. 26.) A review of the record reveals the ALJ's statements to be correct. (Tr. 234, 239.) An ALJ may properly use inconsistencies in the information provided by claimant to physicians and others to discredit a claimant's subjective allegations. *See Tellez v. Barnhart,* 403 F.3d 953, 957 ("inconsistencies in the information [claimant] provided physicians and others treating her about her own physical health and well-being and her work history" used to discredit claimant's subjective allegations).

Additionally, while not discussed by the ALJ in his opinion, this Court notes that the Plaintiff's reports concerning his falling difficulties while being seen at the UAMS Neurology and ENT clinics are inconsistent. For example, on January 25 and March 5, 2012, his records from the ENT clinic indicate no falls in the past twelve months and no fear of falling. (Tr . 532.) Yet his records from the Neurology Clinic on January 17, 2012 indicate that he had fallen "3-4 days ago" (Tr. 554.) and had fallen in the last six months. (Tr. 559.)

The ALJ noted that Plaintiff did not attend all of his physical therapy appointments after the accident. (Tr. 26.)A review of the record reveals this to be an accurate statement, with Plaintiff not showing up to for two appointments and cancelling a third. (Tr. 465-68). The ALJ also noted that Dr. Baker indicated that Plaintiff failed to attend his first visit with neurologist Dr. Kareus. This is less clear in the record, with Dr. Baker's handwriting frequently illegible. there is a notation that he should "keep

5

his appointment with Dr. Kareus." (Tr. 369.) There is also another notation on another appoitnment date

indicating that "he should see Dr. Kareus before committing to another [illegible] which apparently cost

$1200." (Tr. 367.) Failure to follow prescribed treatment may be properly used to discredit subjective

allegations of symptoms. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that

claimant's failure to follow prescribed course of treatment weighed against credibility when assessing

subjective complaints of pain); *see also Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir. 1997)

("[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for

denying an application for benefits.").

      The ALJ noted that the neither Plaintiff's neurologist nor his cardiologist could find a

physiological reason for Plaintiff 's "falling difficulties." (Tr. 26-27.) The ALJ combined these physical

findings with those of Dr. Walz, the consulting neuropsychological examiner requested by Plaintiff. (Tr.

225) Dr. Walz examined Plaintiff twice. The ALJ noted that on the first examination she noted that "the

claimant's performance was inconsistent and stated that his performance was the result of inadequate

effort or related to a brain disorder." (Tr. 26.) The ALJ noted that on the second examination:

> Dr Walz performed a number of neuropsychological tests, including the
> Computerized Assessment of Response Bias (CARB) and the Minnesota Multiphasic
> Personality Inventory, Revised (MMPI-2).
>     The results of the CARB showed that the claimant's performance was in the
> range of persons making minimal effort or not attending to the task (exhibit 30F). The
> effort was far below that expected from either normal controls or persons with frank
> brain impairment (exhibit 30F). Along with that result, the claimant's MMPI-2 results
> also suggested exaggeration of symptoms (exhibit 30F)."
>     Dr Walz also noted that the claimant had significant variability in his performance
> during  her second evaluation (exhibit 30F).

(Tr. 26.) A review of the record reveals these to be accurate representations of Dr. Walz's

findings. (Tr.  ) The "ALJ may discount a claimant's allegations if there is evidence that a claimant was

a malingerer  or was exaggerating symptoms for financial gain." *See Davidson v. Astrue*, 578 F.3d 838,

6

844 (8th Cir. 2009)(claimant's subjective allegations discounted due to malingering scores on two CARB tests, as well as gross exaggeration on the MMPI.").

Plaintiff argues that the use of Dr. Walz's findings in this manner are in error, because she also stated that she found it highly likely that his passing out spells were due to stress. Plaintiff hypothesizes that the stress "could have been from his chronic pain of chronic headaches." (Pl.'s Br. 16.) The ALJ's use of Dr. Walz's findings were not in error. Dr. Walz stated that "it is highly likely that his passing-out spells are related to stress reaction. Further evaluation with the neurologist at UAMS will help differientiate this." (Tr. 522.) This statement does not affect Dr. Walz's findings of exaggeration and malingering on his CARB and MMPI tests in any way. Nor does this use of Dr. Walz's findings raise the concern of mischaracterization of evidence. Further, Plaintif has provided no objective evidence linking his headaches to his falling down spells. Finally, as discussed below, Plaintiff's headaches were improving with treatment at the time the ALJ wrote his opinion and are now being successfully treated with nerve blocks and medication by the UAMS neurologists. Therefore, even if Plaintiff's hypothesis were correct, this source of stress is no longer present.

The ALJ noted that Plaintiff's treating primary care physician, Dr. Baker, had kept Plaintiff off work after the accident and later provided a noted in January 2010 stating that he could not return to work until his neurology consult. However, the ALJ also pointed out that there are no further limitation s on the claimant's activities from Dr. Baker. (Tr. 27.) A review of the record reveals that Dr. Baker continues to be listed at the primary care physician in the most recent UAMS record dated July 2012. (Tr. 631. ) This Court was not able to find any further work limitations from Dr. Baker or any other physician in the record. Further, when directly queried on this point by Plaintiff's attorney, neurologist Dr. Kareus wrote that "we cannot state that Mr. Smith must be off work, because we have not found the direct cause of his symptoms." (Tr. 489.) An ALJ may properly use an absence of limitations from a claimant's physician's to discredit subjective allegations. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th

Cir. 1993) (the lack of any significant restrictions on Smith's activities by his doctors was inconsistent with Smith's claims. )

The ALJ noted that Dr. Kareus's prescription of Topamax  mitigated the Plaintiff's headaches. (Tr. 27.) The last notation from Dr. Kareus in November 2010 indicated that his falling and headaches continued, but they would increase the Topamax, as doing so had helped in the past. He also wanted to refer him to UAMS. (Tr. 489.) The ALJ's opinion date was December 16, 2011. (Tr. 16. ) The UAMS records start on December 19, 2011 and indicate he was taking Verapamil for headaches, which was helping a little, "but not a great deal." He received a nerve block which gave "excellent relief." (Tr. 529, 541.) The Plaintiff acknowledges that the nerve block to three different nerves gives Plaintiff relief from pain. (Pl.'s Br. 12.) Given the information that he had at the time of his opinion, the ALJ correctly noted that the Topamax treatment appeared to be helping the headaches. Further, Plaintiff's headaches are now effectively being treated with nerve blocks and other medication. Thus the ALJ properly disounted some of Plaintiff's subjective allegations of headache pain. *See Brown v. Astrue*, 611 F.3d 941 (8th Cir. 2010) (impairments that are controllable with treatment are not disabling).

The ALJ expressly noted in detail the third party written statements which indicated that the Plaintiff was a greatly changed man  after the accident. (Tr. 25.) However he expressly discounted these statements because they were "dependent on their observations of the claimant's performance, which Dr. Walz's records show is unreliable." (Tr. 26.)

**B. Weight Given to the Opinions of Dr. Walz, Dr. Kelly, Dr. Kareus, Dr.Waack, and Dr. Baker**

Plaintiff also argues that the ALJ did not indicate why he assigned a specific weight to the opinions of the above-listed physicians. This argument is also without merit.

The ALJ gave Dr. Walz, Dr. Kelly, Dr. Kareus, Dr. Waack, and Dr. Baker's opinions "substantial weight." (Tr. 27.) Dr. Kareus is expressly identified as a neurologist and treating physician.

8

(Tr. 26.) Dr. Baker is expressly identified as Plaintiff's primary care physician, and is therefore also a treating physician. (Tr. 27.) Dr. Waack is expressly identified as the cardiologist that Dr. Kareus referred Plaintiff to in order to explore possible cardiac causes for his falling.  (Tr. 24.) The record indicates that Dr. Waack saw Plaintiff several times between May and August 2010. (Tr. 361-64) Therefore Dr. Waack is also a treating physician.   Dr. Walz  is expressly identified as the mental status consultative examiner who has examined the Plaintiff twice. (Tr. 24.) Plaintiff has no treating psychiatric physician. Dr. Kelly is identified as the state psychological consultant, and the ALJ expressly states that Dr. Kelly's findings are given substantial weight because they are consistent with those of Dr. Walz. (Tr. 27.)

Thus, the ALJ has expressly stated his reasons for the weight assigned to these physicians, and these reasons are in accordance with Eighth Circuit law. *See e.g. Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("opinions of specialists on issues within their areas of expertise are generally entitled to more weight than the opinions of non-specialists."); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003)("A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record.").

Plaintiff also argues that is was "inconsistent for the ALJ to give her opinions substantial weight and at the same time deny the claim  because she assigned GAF scores of 35-45 on the first examination and 45-50 on the second examination. However, as pointed out in Defendant's Brief, Dr. Walz questioned the validity of these findings herself due to the test evidence of malingering and exaggeration. (Def.'s Br. 12, Tr. 520-22.)

 **IV.    Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decisions, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.


DATED this 26th day of February 2014.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**